THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY, ) <br> a Connecticut company, ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> CONCURE SYSTEMS, LLC, ) <br> a Nevada corporation, ) <br> ) <br> Defendant ) | No. 3:19-cv-1063 |

## COMPLAINT

Plaintiff, Traveler's Indemnity Company, by counsel, for its Complaint against defendant Concure Systems, LLC, states as follows:

## PARTIES

1. Plaintiff, Traveler's Indemnity Company ("Travelers"), is a Connecticut corporation that is authorized to do business in the state of Illinois, with a principal place of business located at One Tower Square, Hartford, Connecticut, 06183.

2. Defendants Concure Systems, LLC ("Concure"), is a Nevada corporation, domiciled in Arizona, at 3800 N. Central Ave., Suite 460, Phoenix, Arizona.

3. Through separate agreements Travelers has been assigned the rights of Holland/Pepper, A Joint Venture ("Holland/Pepper"), Memorial Regional Health Services, Inc.[1] ("Memorial"), Red-E-Mix, LLC, ("Red-E-Mix"), and Fenix Construction Company of St. Louis ("Fenix"), as to any claims, matters, or causes of action that they have or had, against Concure due to the remediation, replacement and damage caused by the Concure admixture mixed into

---

[1] As assignee of Memorial Group, Inc.

the concrete at the construction project located at Memorial East Hospital, 1404 Cross St., Shiloh, Illinois, 62269 (the "Project"), as described below.

## JURISDICTION

4. This matter concerns property damage to a building located in St. Clair County, Illinois.

5. The matter in controversy is in excess of $75,000, exclusive of interest and costs.

6. Jurisdiction in this Court is properly based on diversity of citizenship under 28 U.S.C. § 1332.

## VENUE

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim and the property which is the subject of this action is situated in the East St. Louis Division of the Southern District, at Memorial Hospital East, 1404 Cross St., Shiloh, Illinois, 62269.

8. Additionally, Concure transacts business within the state of Illinois, and sent its products to be used in the state of Illinois at the Project.

## FACTUAL ALLEGATIONS

9. In December 2013 Fenix contracted to perform work at Memorial East Hospital, 1404 Cross St., Shiloh, Illinois (the "Project site").

10. Fenix's contract was with Holland/Pepper, A Joint Venture.

11. Part of the work Fenix contracted to perform at the Project site included providing and pouring concrete for the planned multi-story building that was to be constructed.

12. The initial specifications for the concrete mixture were provided by Holland/Pepper in its contract documents with Fenix.

2

13. Fenix relayed those specifications to its concrete supplier Red-E-Mix, LLC ("Red-E-Mix"), who then contracted to supply the concrete used at the Project site.

14. The specifications detailed in the contract note that the concrete was to contain a "moisture mitigation admixture – Barrier One or equal."

15. Red-E-Mix contacted Fenix and Holland/Pepper with a substitution request, to substitute the Barrier One admixture contemplated in the contract documents, with an admixture sold by Concure.

16. Concure forwarded to Red-E-Mix, Fenix and Holland/Pepper product description documents created by Concure regarding its admixture.

17. The substitution request, which is attached hereto as **Exhibit A,** contained product specifications and information that were subsequently relied on by Holland/Pepper, Red-E-Mix, Fenix, and individuals hired to review the substitution request, to determine if Concure's admixture could be used in place of the contemplated Barrier One admixture.

18. The substitution request documents contain multiple representations regarding Concure's admixture, including the following:

   a. Concure Systems Admixture is designed to stop flooring failures due to moisture migration through below-grade, on-grade, and above grade slabs.

   b. No limits on Rh or CC Testing.

   c. INTEGRAL in the slab and NEVER requires a topical sealing.

   d. Flooring can usually be installed 30 days after pouring the concrete.

   e. Eliminates moisture problem PERMANENTLY!

   f. Compatible with ALL floor coverings and adhesives and coatings.

   g. Densifies concrete and contributes to increased strength up to 125%.

  h. With CONCURE System's Admixture the concrete becomes a vapor barrier.

 19. The substitution request documents also contained an Admixture Data Sheet, which provided:

> "Using Concure Systems Admixture assures architects and flooring manufacturers that flooring materials will not de-bond due to moisture migration or capillary action inside the slab. When used alone, Concure Systems Admixture acts as a plasticizer and a water reducer. It also completely eliminates the use of other types of admixtures."

 20. Red-E-Mix, Fenix, Holland/Pepper and Memorial, relied on the statements set forth in Concure's substitution request documents, and based on the substitution request documents, Concure's admixture was approved to be used in the concrete to be poured at the Project site.

 21. After the Concure admixture product was approved based on the substitution request documents submitted, Red-E-Mix contracted with Concure to have Concure's admixture added into the concrete mixture poured at the Project site.

 22. Concrete for the multi-story building erected at the Project site was poured by Fenix on various dates from July to September 2014.

 23. Upon information and belief, Concure had a representative at the Project site to ensure that the appropriate amount of admixture was included in the concrete mix prepared by Red-E-Mix.

 24. Months after Fenix poured the concrete at the Project Site, testing was conducted by an independent third-party to assess if moisture was contained within the poured concrete slabs in accordance with the representations made by Concure in relation to its admixture product.

 25. The tests showed that moisture was being emitted from the elevated concrete slabs poured above grade at the Project site.

26. In April 2015 these concerns were brought to the attention of Concure.

27. Additionally, tests were conducted in May 2015, which still showed elevated moisture emitting from the concrete slabs poured at the Project site.

28. Again, Concure was put on notice regarding the tests performed and concerns over the emission of moisture from the slab.

29. Thereafter, Concure made assurances that its product would perform as warranted and represented and directed installation of the flooring. *See,* **Exhibit B,** May 28, 2015 e-mail from Dennis Fyfe at Concure Systems.

30. Relying on Concure's continued directions, representations, and warranties regarding the admixture, Holland/Pepper moved forward with the scheduled installation of flooring at the Project site.

31. Flooring was installed throughout the facility on the 2nd through 4th floors from May to June, 2015.

32. In August 2015 it became apparent that moisture emissions from the concrete were causing applied flooring to buckle and pop off (hereafter referred to as "flooring delamination issues").

33. On August 12, 2015, Holland/Pepper contacted Concure regarding the flooring delamination issues, and notified them that they were having consultants conduct tests to confirm the cause of those issues. *See,* **Exhibit C**, August 12, 2015 e-mail from Dan Sternau at Holland Construction Services.

34. Holland/Pepper hired experienced consultants, SCI Engineering Inc., to conduct industry standard tests on the concrete slabs that contained the Concure admixture.

35. Holland/Pepper also allowed Concure to complete its own independent testing.

36. Upon information and belief, Concure hired Holcomb Engineering to complete porosity tests on samples obtained from the concrete slabs that contained the Concure admixture.

37. On August 21, 2015, Holland/Pepper notified Concure of the conclusions of its consultants in relation to the flooring delamination issues and tests conducted, and addressed Concure's position and the porosity testing done by Concure's retained consultants. *See,* **Exhibit D,** August 21, 2015 e-mail from Dan Sternau at Holland Construction Services.

38. The August 21, 2015, email noted that Holland/Pepper's consultants concluded there was moisture emitting from the concrete slabs that contained the Concure admixture. The email also explained to Concure how the combined testing evidence that there are moisture transmissions through the concrete that are leading to the flooring delamination issues. The email provided Concure notice that it would be proceeding on August 24, 2015 with a topical moisture mitigating system so as to not further jeopardize the overall construction schedule due to the flooring delamination issues. *See,* **Exhibit D.**

39. On or around August 24, 2015, a Concure representative appeared at the Project Site, and a meeting was held to discuss the flooring delamination issues and provide Concure with an opportunity to propose remedies to resolve the flooring delamination issues.

40. Concure disagreed with Holland/Pepper and its consultants' conclusion that the cause of the flooring delamination issues was the Concure admixture.

41. Concure was given additional opportunities to investigate the cause of the flooring delamination issues, and continued to maintain that its admixture product was performing in accordance to its representations.

42. Holland/Pepper hired additional consultants to assess the cause of the flooring delamination issues, and its newly retained consultants came to the same conclusion as its

6

previously hired consultants. Namely, the new consultants concluded that the Concure admixture failed to render the concrete sufficiently resistant to moisture vapor transmission, causing the flooring delamination issues.

43. Despite being presented with the additional consultant reports, Concure continued to deny any responsibility for the flooring delamination issues.

44. Holland/Pepper repeatedly corresponded and relayed information and its mitigation plans to Concure.

45. Concure remained adamant that its admixture product was performing as advertised, and began to take issue with the adhesives used to apply the flooring.

46. As noted above, Concure represented in its product description documents that is admixture was "Compatible with ALL floor coverings and adhesives and coatings". *See,* **Exhibit A.**

47. On October 1, 2015, Holland/Pepper provided a letter to Fenix, Red E Mix, and Concure, with the opinion of its hired expert, that the flooring delamination issues were caused by the failure of Concure's admixture product. The letter explained that the expert consultant opined that all concrete floor slabs would require the application of a topical moisture mitigation system. The letter also states that all flooring installed prior to the identification of the flooring delamination issues would need to be removed and discarded. New flooring would have to be placed after the installation of the topical moisture mitigation system. *See*, **Exhibit E,** Holland/Pepper October 1, 2015 letter.

48. The October 1, 2015, letter again gave Concure the opportunity to provide evidence that the flooring currently bonded to untreated concrete would remain bonded, and gave Concure an opportunity to remedy its defective product. *See*, **Exhibit E.**

49. Concure failed to provide the requested evidence, or an adequate remedy for the flooring delamination issues.

50. Ultimately, Holland/Pepper had to mitigate damages, remove the flooring that was subject to delamination issues, and apply topical moisture mitigation systems to flooring at the Project Site.

51. Concure did not assist or pay for any remedial or mitigating efforts completed by Holland/Pepper to address the flooring delamination issue.

52. Holland/Pepper and Memorial demanded that Fenix reimburse it in the amount of $401,432, for costs incurred in remediation and replacement of floor and flooring at the Project site, due to the failure of Concure's admixture resulting in flooring delamination issues ("Concure's Failure").

53. Pursuant to its policy of insurance (the "policy"), Travelers paid $401,432 to Holland/Pepper and Memorial, on behalf of its insured, Fenix, and has become subrogated to the extent of that payment.

54. Further, Holland/Pepper and Memorial assigned to Travelers their rights to matters, actions, causes of action, and claims against Concure arising out of or relating to the remediation and replacement of the floors and flooring caused by Concure's Failure, as indicated in the attached **Exhibit F**.

55. Additionally, in order to resolve its dispute with Fenix, Red-E-Mix agreed to assign and transfer to Travelers its rights to matters, actions, causes of action, and claims against Concure arising out of or relating to the remediation and replacement of the floors and flooring caused by Concure's Failure, as indicated in the attached **Exhibit F**.

56. Travelers is therefore contractually, equitably, and legally assigned and subrogated to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix against Concure for the $401,432 paid in relation to the remediation and replacement of the floors and flooring caused by Concure's Failure, as indicated in the attached **Exhibit F**.

57. Concure provided an Admixture Limited Warranty to both Holland Pepper and Fenix. A true and accurate copy of the Admixture Limited Warranty is attached hereto as **Exhibit G**.

## COUNT I – Breach of Contract

58. Travelers refers to and incorporates hereon by reference each and every allegation contained in paragraphs 1-57 of this pleading.

59. Red-E-Mix and Concure entered into written contracts in the form of purchase orders for the Concure admixture, wherein Concure was to provide an admixture that met with the specification in its substitution request documents (**Exhibit A)**, and oversee the addition of the admixture into the concrete provided by Red-E-Mix.

60. Concure materially breached the terms of its contract by failing to provide admixture which met with the specification of Concure's product description documents insofar as:

   a. The Concure admixture failed to stop flooring failures due to moisture migration.

   b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity or calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

   c. The Concure admixture failed to be compatible with ALL floor coverings and adhesives and coatings.

   d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

  e. The Concure admixture failed to prevent water vapor emission in the concrete slabs poured at the Project site.

  f. Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

61. Red-E-Mix performed all of the covenants and conditions in its contract with Concure, including paying Concure for the admixture product, allowing Concure to be present when the concrete was being mixed to ensure that the Concure product was added in as specified, communicating with Concure, and complying with the terms of the purchase orders; except to the extent that such performance has been prevented, excused, hindered, or waived by Concure.

62. Travelers is informed and believes that as a direct and proximate result of the material breach of the contract with Red-E-Mix, Holland/Pepper and Memorial were forced to remediate and replace the floors and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and against Concure for its breach of contract, plus costs, fees, and such other relief as this Court deems just and equitable.

## **COUNT II – Breach of Implied Warranty of Merchantability**

63. Travelers refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62 of this pleading.

64. Upon information and belief, Concure designs, prepares, produces, supplies, and delivers concrete admixture.

65. The ordinary and intended use of the Concure admixture is designed to stop flooring failures due to moisture migration through slabs poured below-grade, on-grade and above grade.

66. The Concure concrete admixture designed, prepared, supplied, and delivered by Concure to Red-E-Mix to include, under Concure's direction, in the concrete mixture poured at the Project site failed and was unsuitable for the ordinary purpose for which it was sold, in the following ways:

   a. The Concure admixture failed to stop flooring failures due to moisture migration.

   b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity or calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

   c. The Concure admixture failed to be compatible with <u>ALL</u> floor coverings and adhesives and coatings.

   d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

   e. The Concure admixture failed to prevent water vapor emission in the concrete slabs poured at the Project site.

   f. Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

67. The deficiencies in the Concure admixture actually and proximately caused the concrete to become defective and fail to meet the requirements of the Project, such that Holland/Pepper and Memorial were forced to remediate and replace the floors and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and

against Concure for its breach of implied warranty of merchantability, plus costs, fees, and such other relief as this Court deems just and equitable.

### **COUNT III – Breach of Implied Warranty of Fitness For Use**

68. Travelers refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 67 of this pleading.

69. Concure knew and had reason to know that the particular purpose Red-E-Mix was purchasing the Concure admixture for was to stop flooring failures due to moisture migration on slabs poured above grade.

70. Concure communicated with Red-E-Mix, Fenix, and Holland/Pepper regarding how the Concure's admixture was to be used, as well as providing and discussing the contents of the substitution request documents (**Exhibit A**).

71. Red-E-Mix, Fenix, Holland/Pepper, and Memorial relied upon Concure to provide a concrete admixture that was synonymous with the admixture described and set forth in the substitution request documents (**Exhibit A**).

72. The Concure admixture provided by Concure to Red-E-Mix and thereby Fenix, Holland/Pepper, and Memorial, failed to meet the particular purpose for which it was provided in the following ways:

   a. The Concure admixture failed to stop flooring failures due to moisture migration.

   b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity and calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

   c. The Concure admixture failed to be compatible with ALL floor coverings and adhesives and coatings.

   d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

    e. The Concure admixture failed to prevent water vapor emission in the concrete slabs poured at the Project site.

    f. Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

73. The deficiencies in the Concure admixture actually and proximately caused the concrete to become defective and fail to meet the requirements of the Project, such that Holland/Pepper and Memorial were forced to remediate and replace the floors and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and against Concure for its breach of implied warranty of fitness, plus costs, fees, and such other relief as this Court deems just and equitable.

## COUNT IV – Negligent Misrepresentation

74. Travelers refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 73 of this pleading.

75. Concure had a duty to provide Red-E-Mix and thereby Fenix, Holland/Pepper and Memorial, with truthful and accurate information regarding the Concure admixture designed, prepared, produced, delivered, and used in the concrete slabs at the Project site.

76. Pursuant to Red-E-Mix's purchase orders for the Concure admixture, Concure was to provide an admixture that met with the specification in its substitution request documents (**Exhibit A**).

77. The statements and representations contained in Concure's product description documents (**Exhibit A**) were made with the intent to assure Red-E-Mix and thereby Fenix,

Holland/Pepper, and Memorial, that the Concure admixture product was a suitable replacement for the Barrier One admixture specified in the original contract specifications.

78. The product statements and representations contained in Concure's substitution request documents (**Exhibit A)** were material and relied upon in the approval of the Concure admixture for use at the Project site.

79. The statements of fact set forth in the substitution request documents (**Exhibit A**), were not truthful or accurate, and were misrepresentations made carelessly or negligently, given that:

   a. The Concure admixture failed to stop flooring failures due to moisture migration.

   b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity and calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

   c. The Concure admixture failed to be compatible with <u>ALL</u> floor coverings and adhesives and coatings.

   d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

   e. The Concure admixture failed to prevent water vapor emissions in the concrete slabs poured at the Project site.

   f. Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

80. Concure's misrepresentations caused Red-E-Mix and thereby Fenix, Holland/Pepper, and Memorial to use a deficient concrete admixture, which actually and proximately caused the concrete to become defective and fail to meet the requirements of the Project, such that Holland/Pepper and Memorial were forced to remediate and replace the floors

and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and against Concure for its negligent misrepresentations, plus costs, fees, and such other relief as this Court deems just and equitable.

### COUNT V - Negligence

81. Travelers refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 80 of this pleading.

82. Travelers is informed and believes that Concure designed, prepared, produced, supplied, and delivered a concrete admixture to Red-E-Mix at the Project site that it knew or should have known was not properly designed, prepared, produced, supplied, or delivered, such that the Concure admixture would be defective and not of merchantable quality.

83. Concure was under a duty to exercise ordinary and reasonable care to avoid reasonable foreseeable injury to Red-E-Mix and thereby Fenix, Holland/Pepper, and Memorial, and knew or should have known, with reasonable certainty, that property damage at the Project site would result from the failure of Concure's admixture to perform in the manner set forth in its substitution request documents (**Exhibit A**) and without defects.

84. Nevertheless, Concure breached its duty of care insofar as it failed and neglected to design, prepare, produce, and/or deliver a concrete admixture that properly or adequately met the specification and representations set forth in the its product description documents (**Exhibit A**), given the following:

    a. The Concure admixture failed to stop flooring failures due to moisture migration.

  b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity and calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

  c. The Concure admixture failed to be compatible with <u>ALL</u> floor coverings and adhesives and coatings.

  d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

  e. The Concure admixture failed to prevent water vapor emission in the concrete slabs poured at the Project site.

  f. Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

85. Concure's breach of its duty of care caused Red-E-Mix and thereby Fenix, Holland/Pepper, and Memorial to use a deficient concrete admixture, which actually and proximately caused the concrete to become defective and fail to meet the requirements of the Project, such that Holland/Pepper and Memorial were forced to remediate and replace the floors and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and against Concure for its negligence, plus costs, fees, and such other relief as this Court deems just and equitable.

## COUNT VI – Breach of Express Warranty

86. Travelers refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 85 of this pleading.

87. Concure provided the written Admixture Limited Warranty attached as Exhibit G in connection with the Project.

88. Concure's Admixture Limited Warranty states in relevant part that it will stop moisture migrations and the de-bonding of floorcoverings from the concrete itself.

89. Concure issued its warranty on the Project with regard to moisture vapor emission under the results of ASTM D-5084 and ASTM D-4263.

90. Test results from the Project showed that the requirements of ASTM D-5084 and ASTM D-4263 were met.

91. Concure was given the opportunity to replace or repair the damaged floor coverings at the Project, or otherwise remedy its defective product, on October 1, 2015 as referenced in **Exhibit E.**

92. Concure did not replace or repair the damaged floor coverings at the Project.

93. The Concure concrete admixture designed, prepared, supplied, and delivered by Concure to Red-E-Mix to include, under Concure's direction, in the concrete mixture poured at the Project site breached the express warranty in the following ways:

   a. The Concure admixture failed to stop flooring failures due to moisture migration.

   b. The concrete slabs containing the Concure admixture failed to meet the industry standard requirements for relative humidity or calcium chloride testing approximately a year after the concrete slabs were poured at the Project site.

   c. The Concure admixture failed to be compatible with ALL floor coverings and adhesives and coatings.

   d. The Concure admixture failed to make the concrete slabs at the Project site a vapor barrier, as testing showed that the concrete slabs continued to emit moisture vapor approximately a year after the concrete slabs were poured.

   e. The Concure admixture failed to prevent water vapor emission in the concrete slabs poured at the Project site.

    f.   Even after approximately one year of drying, the concrete slabs at the Project site containing the admixture emitted moisture, such that flooring could not be installed without a topical sealant.

95. The deficiencies in the Concure admixture actually and proximately caused the concrete to become defective and fail to meet the requirements of the Project, such that Holland/Pepper and Memorial were forced to remediate and replace the floors and flooring, as indicated in **Exhibit F,** and seek compensation from Fenix and thereby Red-E-Mix.

96. By failing to repair or replace the de-bonded floor coverings, and by failing to otherwise remedy the de-bonded floor coverings and conform to its stated specifications, Concure breached the terms of its Admixture Limited Warranty.

WHEREFORE Travelers, as the contractually, equitably and legal assignee and subrogor to the rights of Holland/Pepper, Memorial, Fenix, and Red-E-Mix, requests judgment in its favor and against Concure for its breach of the Admixture Limited Warranty, plus costs, fees, and such other relief as this Court deems just and equitable.

    Respectfully submitted,

    Stone & Johnson, Chartered

    *\s\ Matthew B. Stephens*
      Matthew B. Stephens

STONE & JOHNSON, CHTD.
111 West Washington, Suite 1800
Chicago, Illinois 60602
Phone:  312-332-5656
Fax:  312-332-5858
mstephens@stonejohnsonlaw.com

## **CERTIFICATE OF SERVICE**

I, the undersigned, being first duly sworn upon oath, depose and state that I caused to be served the foregoing <u>above-mentioned document</u> by electronically filing the same with the Clerk for the U.S. District Court for the Southern District of Illinois, a copy of which was then forwarded to each attorney of record by CM/ECF on <u>October 1, 2019</u>.

*\s\ Matthew B. Stephens*
Matthew B. Stephens

STONE & JOHNSON, CHTD.
111 West Washington, Suite 1800
Chicago, Illinois 60602
Phone: 312-332-5656
Fax: 312-332-5858
mstephens@stonejohnsonlaw.com